The next matter, number 24-1360, Cynthia Allison Foss v. Eastern States Exposition. At this time, would counsel for the appellant please come to the podium and introduce himself on the record to begin? Your Honors, and may it please the Honorable Court, Andrew Grimm of the Digital Justice Foundation, on behalf of appellant Cynthia Allison Foss. I'd like to reserve three minutes, if I may. Yes. Your Honors, there are two issues before the Court in this appeal. The first is the application of the second restatement of judgments, Section 20, Comment N, Exceptions to the Preclusion Doctrines. And the second are the limitations issues. In this appeal, I think it's common ground, given the prior appellate decision, that the Alternative Determinations Doctrine applies here. And the question is whether the Comment N exception to the exception applies here. Before you get into Comment N, but related to that, it doesn't appear that in your briefs you respond directly to the appellee's contention that the Steppens case provides another way to find prejudice, basically in preclusion, outside of estoppel and latches. Do you have a position on Steppens now? Yes, Your Honor. I think the Marvick, Inc. decision from last year addresses, so first of all, Steppens is applying a draft version of their statement. It's not actually applying the final version and language of their statement. Moreover, and I think it's really important to read Steppens in full, but I would just, if there's one section to turn to, it's Footnote 1. It describes a litigant who essentially what he was doing was applying for jobs, so he could then file lawsuits against them, nearly a dozen lawsuits. And on that record, it was described how he wanted to personally create a circuit split and go to the U.S. Supreme Court. So I would just read the decision in full about what the party was doing there. And I think the third position on Steppens that I would point out is, and the appellee points out, is the manifest injustice standard. So in Steppens, you have someone who's clearly abusing the legal system, and also appellee describes a manifest injustice standard. But I would note the comment N mentions two doctrines, latches and estoppel, neither of which were argued below or asserted below. Our position is that they're forfeited for purposes of appeal if appellee truly believes they can be established here. We have no opposition to asserting them on remand, but we respectfully submit that those weren't asserted below and aren't established. And I would note appellee concedes in their brief they're not asserting latches. If you go to estoppel. I think appellee's position is that the merits were fully or at least partially litigated below in the previous iterations of this case so that the district court's decision that Eastern would be prejudiced could maybe stand under Steppens or under that sort of exception. Can you address that? Do you have a position on whether the merits were litigated below? Well, I mean, so I just want to be very clear. So I think the merits as to sort of remember when this case originated there were a number of parties and a number of claims. And now there's essentially one plaintiff and one defendant and copyright claims. So the state law claims were decided. They're completely out of the case. So then you have the copyright claims. But the only disposition on the alternative determinations exception was in the prior appeal. And the court held that it applied and addressed. So I think Eastern was arguing in that decision that what I would call the rigorously considered events. And this is at Appendix 96 to 97. That's in the first decision. And the fact there is, sure, there were matters that were considered. So I think one response on that is that to the extent that they, so they describe a lot of work that they did. It's not akin to Steppens. I mean, in Steppens you're talking about an attempt to manufacture litigation in bad faith. And the prior appellate decision is quite clear. At App 88 footnote 9, the district court did not dismiss as some kind of sanction and didn't do so again on remand. So some of the merits issues are related to the state law claims. And that's not wasted time. Those state law claims were dismissed. We haven't reasserted them in any way, shape, or form. So they did narrow the claims. I would also note, it's really important here, we had the First Circuit had not ruled on whether it would adopt the application rule or the registration rule. So parties in this court didn't know whether they just had to apply or whether they had to actually receive a decision. The Fifth and the Ninth Circuit said one way. But is the Chief filing suits throughout that time? Well, no. All her suits were filed before the Fourth Estate decision. Except the most recent one, and the most recent one, she had a registration decision. So there's a circuit split on the issue. And it only gets resolved after the lawsuits are filed. But isn't she filing as she's in applied status? Yeah, so she had applied as of April 2017. So that's the effective date listed on the registration. When's her first lawsuit? Prior to her first lawsuit, she had submitted an application. The issue here is that there was correspondence. So sometimes the Copyright Office can take a while to issue a registration because they have to send letters back and forth and make decisions. And this was a particularly complicated registration because you have, first of all, you have the actual artwork in the monastery that's separate. Then you have the raw photography. And then you have what Ms. Voss did and she took with the photographer. So that's what I think took them so long to issue the registration. But what I do know for sure is the application date, which is the effective date of registration. I think there is some confusion by the District Court between those two dates. So it's just like, for example, when this court issues a ruling, it goes back in time and affects what happened in the District Court. Same thing at the Copyright Office. When the Copyright Office has an application date and it can take a while for it to be processed, but the effective date, and that's in 17 U.S.C. section 410, subsection D, and that expressly says the effective date is the application date. And that's what they list on the certificate. And that's, I think, very important for the limitations argument as well. Did you want me to address other? I would also note the Brown decision that Apley relies upon was expressly distinguished by the earlier panel. Can you turn to the limitations argument and focus on, to me, what do you say is the infringement that triggers the running of the statute of limitations? What's the last date based on what you say the infringement is? So the infringement here are the online distributions and displays. And so the Petrella decision expressly says that copyright has a separate accrual rule. And that's at, it says it's well established that there's a separate accrual rule. All right, so the district judge says that based on a letter she wrote, she was aware that it was up on YouTube at a date that's more than three years in the past. So why is that not when it accrued, if she's aware that it's been posted on YouTube? So two reasons, Your Honor. So YouTube, so let's go pre-internet. If a defendant is distributing copies of it through the mail, every time they do the distribution, that's a new infringement. That's established under prior law. And what the Petrella decision establishes, that's what the separate accrual rule is. So putting it up online, every time someone's viewing it, and as the Bellevue-Wilmot Storage Services that we cite in the reply brief discusses, when it's online and it's there being displayed on the internet, that is accruing additional. All right, so just so I get that nailed down, your argument is that when something is on a server, like YouTube server, there's an infringement basically every second until it's taken down from that server. So it's the last second that it's on YouTube that counts. Sure, and I mean, the limitations period would still affect damages, right? Because it would only go back three years from that last accrual. But I got it right. That's your position. Just that it's the last second it was on YouTube. Every day, because we deal with days, but sure. It would be accruing every single day it's being displayed. So not that you could make it private, you could stop the online distributions. It would be within their control. In this situation, we tried extensively to figure out what that date was. I was trying to figure out before we filed suit, they wouldn't tell us. We've asked for a discovery. They would have every incentive to just tell us what the date was. They won't state the date. So we know that what happened here is they posted it. She went to them. They took it down for a little bit. They put it back up after she asked them for attribution. Your legal error is the district judge said it's the first day it went up on YouTube, and you're saying it's the last day. That's the error. It's the day it came down, and otherwise, if you think about that, it would mean that if someone posts it, and you don't catch it, they can just keep using your property forever. So an example would be they're trespassing at your house. The trespass continues until you stop. They're still doing—so go to 106, Section 17 U.S.C. 1. But Petrella talked something about a continuing harm is not the accrual. So what's the difference between—your trespass seems like a continuing harm. Like you committed a trespass when you entered the property, but I'm hurt as long as you stay on the property doing what you're not supposed to be doing. How is that different than the display is when I put it on YouTube and sure, every day that it's up, that hurts me, but that's just the continuing harm from the first putting it up on YouTube. Well, I guess what I would say is 106, 1 through 6, defines what the actual infringing acts are, and they say a distribution is an infringing act. So the harm is the reduction in value, the loss of control, the loss of attribution, all of those follow-on activities from the distribution. So the harm is that she no longer has control over her property, all those kinds of things that follow on from it, and those would go to the extent of it, but you still have a separate issue there. So if they put one of these pictures on a billboard in front of their property, their commercial property, then that would be a continuing violation in your view every day until they took it down? Well, I think that, can I answer your question, Your Honor? Please. So I think I have two responses to that. One is on the Internet, they're actively sending out new copies. So I think that presents a harder question. I think if they covered it up in some way, they wouldn't have to necessarily take it down. But on the Internet, the way the Internet is structured, but I don't think you need to address that because the standard rule limitations in case after case, the district court was briefed on it, it completely ignored the issue, but the standard rule limitation says until she's able to come to court, and there's no dispute that she couldn't come to court until she had received a registration. That's the registration decision date. And we present a number of cases again and again where the Supreme Court has said, until you can institute an action, the statute of limitations does not accrue. But then you could just by holding off filing a registration extend the statute of limitations indefinitely? No, I think at that situation, first of all, I wouldn't let an extraordinary outlier that you could address separately address the standard situation. But, no, I'd say two things on that. One is the plaintiff still has to prove their case, right? So if they're trying to do that, and they're hiding from the defendant, their evidence is going away, and that's not spoliation, that's the plaintiff losing evidence in their case. So the plaintiff still has to prove it. Second, the plaintiff loses important remedies. So Copyright Act gives three remedies, actual damages, statutory damages, attorney fees. If you don't have the registration when you file, you know, before the infringement occurs, you're going to lose two of those remedies. So that's how Congress balanced it. Congress made a policy decision to address that concern. Look, you can get your actual damages. You lose two other forms of remedies if you don't have the registration. And I would note, finally, on the standard rule limitations, it's a matter of statutory interpretation. It's a clear statement. So they have to show a clear statement to the contrary or it applies, and Appellee hasn't attempted to do that, Your Honor. Your time is up. Thank you, Counsel. At this time, would Counsel for the Appellee please introduce herself on the record to begin? Good morning. May it please the Court, I am Lauren Osberg, and I represent the Defendant Appellee Eastern States Exposition. Appellant's counsel was correct. There are two issues on appeal, and there are two issues, two independent bases, on which the district court dismissed below in what we hope is for the final time. The first was claim preclusion, ultimately, under the exception to the Alternative Determinations Doctrine, which this court adopted explicitly for the first time two years ago in the first Foss v. Eastern States Exposition, remanded for proceedings consistent with that opinion, and then further clarified in the Foss v. Margaret case. Under the exception, under Common End, concerning the Alternative Determinations Doctrine, Eastern, the district court below, was correct, and Eastern has shown prejudice, and that it would be manifestly unfair if we were required to, yet again, defend ourselves against a suit brought by Ms. Foss now for the fifth time. How do you address your opponent's claims that the district court really didn't tie the prejudice test there to latches or to a staple, or even specifically to a broader prejudice finding under Stebbins? I would say, one, I see no requirement in the First Circuit's jurisprudence that the prejudice be explicitly tied to a staple or latches. I do see an interest in Common End that it be informed by the doctrines of a staple and latches, and that makes sense, because all of the authority cited relating to Common End in the restatement deals with principles that underlie the doctrines of a staple and latches. For example, we've expressed concerns about evidentiary prejudice, which are certainly tied to the doctrine of latches. One of the elements throughout Stebbins, which I think is very on point thematically, even if it didn't use the exact words of Common End ultimately adopted, Stebbins taught that particularly when the plaintiff is especially blameworthy or able to cure the defect in the pleading that prevented the prior adjudication from becoming an on-the-merits adjudication that was claim-preclusive, you should look to that. And that sense of blameworthiness, or who is positioned to cure it, is also related to the doctrine of a staple. And so to, I think, answer your question, I believe that, again, FOS vs. Eastern States clearly, to me, and to the district court below, indicated that there should be an analysis of prejudice, and I do not believe, certainly this court did not say in FOS vs. Marvick that we were required to make an affirmative defense of latches in order to show that we met the exception to the exception to the doctrine of claim-preclusion. Speaking of the prejudice that my client suffered, one, I think we made three, we articulated three bases for finding prejudice under Comment N of the Restatement Section on the Alternative Determinations Doctrine. The first, and one of the most fundamental, I think, is that we did reach the merits. The court did reach the merits, and my client, at least, had to prepare to engage in and reach the merits multiple times and multiple iterations, and that's taught, that was significant in the Stebbins case, it was significant in the Browning case, and the specific ways I've articulated in the brief, the specific ways we prepared to meet the merits, one was litigating a motion for preliminary injunction, another one was litigating the state law claims, again, a third was litigating for the third time the registration precondition issue. I would like to talk briefly about the, what I've heard referred to in several cases now, as the uncertainty in the, whether the application rule or the registration rule applied, and as though that uncertainty somehow informed Ms. Foss' action or prejudiced her in this case, because the first three times my client brought a motion to dismiss on the ground that she had failed to allege compliance with the registration precondition, we made arguments that she failed under either the application rule or the registration rule. That argument is moot and has no basis, because she could have, under what the district court ultimately ordered her to do, and under the standard we articulated in our brief, at least pled compliance with the registration precondition, as it was understood, by saying clearly that she had registered the work in question, or she had submitted an application to register the work in question and paid the fee, which she had done, we now know, as of April 2017, which was more than, which was, her first suit was in 2018, and so it was at least nine months before that date. Speaking of things that Ms. Foss knew and when she knew them, on the issue of statute of limitations, the standard in the First Circuit has been, the First Circuit, like many other circuit courts, has adopted the discovery rule. The discovery rule says that the three-year statute of limitations begins to run when the party knew, or reasonably should have known, of the infringing act. Right, but here the claim is that there was a repeat infringing act every time someone went on YouTube and looked at it. Yes, and so I will say two things about that. The first is that because after we served a motion for sanctions, defendant explicitly amended their complaint to withdraw allegations of subsequent infringements, and so I don't think the plaintiff, I think the doctrine of estoppel prevents plaintiff from coming back to court now and saying, we are saying that there were infringements after the September 2016 posting on YouTube and Facebook. Second, I've given you case law, Montserrat in the District of Massachusetts and Minden Pictures in the Southern District of New York that says specifically with the Internet, if we're talking about a display, the date of posting, the date of committing the infringing act, is what matters. To the extent Ms. Foss is now arguing that there were some secondary repostings by people who were able to access it through Eastern State's display, there's been no evidence of that. Discovery that would go to that issue is some of the evidence that Eastern has said it no longer has access to and has been prejudiced by the loss of, and furthermore... Could you stay with that point? Are you saying your client doesn't know when it was taken down? So that is not what I was saying right then. If your client does know when it was taken down, why isn't it in the record? Why didn't they submit a one-page affidavit saying here's when it was taken down? In the procedural posture we're in right now, if my client had submitted an affidavit about anything, there would have been a demand for discovery and significant litigation on the issue of the demand for discovery, and because the prejudice that we have experienced is clear on the record, and because when the statute of limitations is running is clear on the record based on when Ms. Voss sent a letter and First Circuit jurisprudence, we did not choose to submit an affidavit that would begin to flesh out those factual issues. So they, in their reply brief, they rely on Bell from the Ninth Circuit, I think, to say an infringement happens each day that it's on the server, that the infringing material is on the server. So what's your response to their citation of Bell, which we haven't had a chance to respond to? So Bell was raised for the first time on a reply brief, so I would say the arguments concerning Bell were waved below. Reading Bell, that is not what that case says. What that case says, based on my memory, is the case that my brother counsel litigated, and so I'm sure he's more familiar with it, but my understanding is what Bell says, the holding of Bell was really that if the only person who looks at a work online is the person who created it and is suing for infringement, it is still an infringement and it is not a de minimis offense, even if the only person to whom this infringing work could be displayed was the person who was perpetuating the lawsuit. I will also say the dissent in that case, or possibly a concurrence in that case, urged the plaintiff in that case to abandon its suit, even though it was remanding below because of the wastefulness of the litigation. Further? But still, it strikes me that the premise was still that we have to figure out what display means, right? That's the question for the statute of limitations we have to resolve, and you tell me you have a couple cases that say the display is the moment it's put up and then everything after that, I guess, would be a continuing harm. And the response is, well, no, because every day it's up, it can still be obtained or seen, and you don't need to show actual seeing, that it's being displayed every day. And if you type the right things into the search bar, you're going to see it. And so that makes it a display every day, and so the last day is the day. And I want to understand legally why that's wrong. That is wrong because what the statute of limitations is concerned about and what the harm from copyright infringement is concerned about is the date of the infringing act, right? The act and the act for purposes of... The act is reproduction, the act is display. In the Petrella case, which was the Raging Bull movie, they said, okay, well, it's like the reissue of Raging Bull, right? It's distributing it in a different medium. It's reprinting the book. The books, books, and I think it's a little bit easier if we think about the analog medium, because let's say I, a publisher, infringes somebody's copyright, you know, in 1970, something's really big. They publish it. It's distributed at that time. Maybe it's being resold in bookstores, secondhand bookstores, but the original publisher is not liable for that, you know, in 1990. They're liable when they reissue. And a point I was getting to, I don't think I've responded to your question, but a related point I was hoping to get to, is that to the extent there are subsequent infringements, right, that are somehow enabled by a party's infringement, well, then that can be pled, right? There can be, if there was any evidence that had been redistributed by someone, you know, through a YouTube link or something, then Ms. Foss could have brought suit against that redistributor, right, and sued my client for secondarily liability. I believe at one point in two lawsuits ago, she conceded that there couldn't be a claim for secondary liability for various reasons. One last point I would like to make on statute of limitations, unless there's any further questions. I have, you know, heard talk about this standard rule that would, in my brother's estimation, require the statute of limitations not to begin running until the party had obtained registration. All of the case law that I've read and that is cited in my brother's brief about the statute of limitations and the standard rule focuses on when a legal injury has been suffered, right? And so the cases below, right, it's when the regulation, in corner post, it's when the regulation actually affects the potential plaintiff. In the case of... the case involving employment, it was when the party was resigned and therefore was constructively discharged in retaliation. And so the focus is not whether the below party had perfected their claim, had done what they needed to do to come to court, it was whether they had actually suffered a redressable legal injury. And to the extent... No, that was my point. And so, and it makes sense. I mean, Fourth Estate does seem consistent with... as I understand it, right, Fourth Estate says the complaint was, well, we might lose the statute of limitations while we wait for the copyright office to approve the registration. And the court said, well, don't worry about that. Yeah. So there's an assumption under that. There is an assumption under that that it does run, right? That it continues to run while you're attempting to register. And I think that's rational. That is rational because you can register, you can pre-register a work. You know, you can register at any time. Yes. And I think the standard rule is meant to protect, is meant to protect plaintiffs who are not responsible for, you know, when the harm actually is inflicted upon them and when they could come to court without the claim being called, you know, premature and not adjudicable. Rebound would be inappropriate. Thank you. Thank you. Thank you, Counsel. At this time, Counsel for the Appellant has a three-minute rebuttal. Please remember to reintroduce yourself on the record to begin. Your Honors, and may it please the Court, Andrew Grimm of the Digital Justice Foundation for Appellant. On limitations, I would note the statute of limitations is an affirmative defense. It is the obligation of the defendant to show us the date on the last date on which it accrued. And what we know is that it was posted. We don't know the last time it was taken down. As to Bell, the key holding of Bell is you don't need to prove who saw it. It's merely being up on the server is enough. And I would just point out, it'd be like if you took a J.K. Rowling novel and you start distributing it, you'd have copies of it across the Internet. That's what's going on when you're leaving it up there. I think the argument is that your complaint, as it was developed and construed in the litigation, did not so define the act of infringement to include the residual posting. I respectfully disagree, Your Honor. I think there's two things. So Ms. Voss had reason to believe that there were additional acts beyond the YouTube posting, but we've never taken the ID. We don't know when they took it down because we know they took it down and then reposted it. We never withdrew from the position that they had to tell us and meet their affirmative defense on what date was it taken down, and they didn't do that. We also believe there were additional copies made even after it was taken down. You have to point to different discrete acts to trigger the statute of limitation. Each discrete act triggers it. Doesn't your complaint focus on one discrete act rather than multiple ones? We know that they posted it, and the discrete acts are the ongoing distributions that Eastern States was doing through YouTube. And you say that's alleged in the complaint? Well, yes, because I also think that's subject to judicial notice until they take it down or make it private in some way. I think that's a factual issue of how it operates in the same way that if you're sending out mailings, the court can assume that they're mailed to the public. I don't know if we specifically allege that. We certainly never withdrew that, and it's their obligation as an affirmative defense to tell us when those distributions stopped. As to the standard rule limitations, the Supreme Court calls it the default rule. It says it's a canon of construction. Here's what the text says. No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued. The Supreme Court tells us accrual means the standard rule in the Comer decision just this past year, and in addition, there was no ability to go to court here. In fact, Ms. Floss was kicked out of court in the initial claims. Can I make one more point, Your Honor? Be quick. Okay, I would just say insofar as the court reached the merits on the state law claims, those are gone. Insofar as they were litigating the merits, they've already done the work to re-litigate the merits. There's not time wasted, and they haven't shown how that loss would harm them in evidence if there's lost evidence. It would probably harm the plaintiff here because she doesn't have there would be loss of evidence, and she has the obligation to prove her claims. Thank you, Your Honors. You should reverse and remand. Thank you. Thank you, Counsel. That concludes argument in this case.